1  Tarek H. Zohdy (SBN 247775)
   Tarek.Zohdy@capstonelawyers.com
2  Cody R. Padgett (SBN 275553)
   Cody.Padgett@capstonelawyers.com
3  Capstone Law APC
   1875 Century Park East, Suite 1000
4  Los Angeles, California 90067
   Telephone:   (310) 556-4811
5  Facsimile:    (310) 943-0396

6  Russell D. Paul (*pro hac vice*)
   rpaul@bm.net
7  Amey J. Park (*pro hac vice*)
   apark@bm.net
8  BERGER MONTAGUE PC
   1818 Market Street, Suite 3600
9  Philadelphia, PA 19103
   Telephone:   (215) 875-3000
10 Facsimile:    (215) 875-4604

11 Attorneys for Plaintiff David Patrick

12          UNITED STATES DISTRICT COURT

13          CENTRAL DISTRICT OF CALIFORNIA

14

| | |
|---|---|
| 15  DAVID PATRICK, individually, and on behalf of a class of similarly situated individuals, | Case No.: 8:19-cv-01908 MCS-ADSx |
| 16 | Hon. Mark C. Scarsi |
| 17          Plaintiff, | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| 18          v. | |
| 19  VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey corporation, | |
| 20 | |
| 21          Defendant. | Date:      September 27, 2021<br>Time:      9:00 a.m.<br>Place:     Coutroom 7C |
| 22 | |

23

24

25

26

27

28

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 27, 2021, at 9:00 a.m., in Courtroom 7C of the above-captioned Court, located at 350 W. 1st Street, 7th Floor, Los Angeles, California 90012, the Honorable Mark C. Scarsi presiding, Plaintiff David Patrick will, and hereby does, move this Court to: (1) enter an order finally approving the settlement described in the Settlement Agreement (Dkt. No. 56-1, Ex. 1) preliminarily approved by the Court on March 10, 2021; (2) finally certify the Settlement Class; (3) enter a judgment to dismiss the action.

This Motion is based on: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Action Settlement; (3) the Declaration of Tarek H. Zohdy; (4) the Declaration of Russell D. Paul; (5) the Declaration of Jennifer M. Keough Regarding Class Notice and Claim Administration; and (6) the records, pleadings, and papers filed in this action; and (8) on such other documentary and oral evidence or argument as may be presented to the Court at the hearing of this Motion.

Dated: August 30, 2021                    Respectfully submitted,

By: Tarek H. Zohdy
Tarek H. Zohdy
Cody R. Padgett
**CAPSTONE LAW APC**

Russell D. Paul (*pro hac vice*)
Amey J. Park (*pro hac vice*)
**BERGER MONTAGUE PC**

Attorneys for Plaintiff David Patrick

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................. 1

II.    FACTS AND PROCEDURE ................................................................ 2

    A.    Overview of the Litigation and Arm's Length Settlement
        Negotiations.................................................................................. 2

    B.    The Court Granted Preliminary Approval.................................... 3

III.    MATERIAL TERMS OF THE SETTLEMENT.................................... 4

    A.    Benefit I: Service Action Updating ECM Software ................... 5

    B.    Benefit II: Reimbursement for Past Out-Of-Pocket Expenses
        Paid for a Covered Repair Prior to the Notice Date ................... 5

    C.    Release of Liability..................................................................... 7

    D.    Claim Submission........................................................................ 8

    E.    The Notice to The Settlement Class Was Disseminated in
        Accordance with the Court-Approved Notice Plan .................... 9

    F.    There Have Been No Objections to The Settlement, and Only 8
        Requests for Exclusion. ............................................................ 10

    G.    Proposed Class Counsel Fees, Litigation Expenses, And
        Class Representative Service Award.......................................... 11

IV.    ARGUMENT ...................................................................................... 11

    A.    Class Certification Requirements Are Met ............................... 11

    B.    The Court Should Grant Final Approval of the Class Settlement .......... 11

        1.    Class Representative and Plaintiff's Counsel Have
            Adequately Represented the Class and the Settlement
            Was Negotiated at Arms'-Length ................................. 13

        2.    The Settlement, Which Provides Valuable Benefits to
            the Class, Is Fair, Reasonable, and Adequate.............. 14

            (a)    The Relief Provided for the Class Is Fair,

Adequate, and Reasonable Considering the Costs, Risks, and Delay of Trial and Appeal ................................. 15

(b)    The Method of Distribution, Attorneys' Fees, and Other Agreements ................................................ 18

3.    The Settlement Treats Settlement Class Members Equitably ............................................................... 19

4.    The Extent of Discovery Completed Supports Final Approval ................................................................... 20

5.    The Views of Experienced Counsel Should Be Accorded Substantial Weight .......................................... 22

6.    The Reaction of Settlement Class Members to the Proposed Settlement ......................................... 22

C.    The Settlement Satisfies the *Bluetooth* Factors ........................................ 23

V.    CONCLUSION ................................................................ 25

# TABLE OF AUTHORITIES

**CASES**

*Aarons v. BMW of N. Am. LLC*, 2014 U.S. Dist. LEXIS 118442 (C.D. Cal.
Apr. 29, 2014)........................................................................................................ 18

*Adoma v. Univ. of Phoenix, Inc.,* 913 F. Supp. 2d 964 (E.D. Cal. 2012)........................ 14

*Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015) ................................................................ 13

*Asghari v. Volkswagen Grp. of Am.*, 2015 WL 12732462 (C.D. Cal. May 29,
2015) .............................................................................................................. 18, 20

*Boyd v. Bank of Am. Corp.*, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014)................... 20

*Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016) ...................... 11, 15

*Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534 (C.D. Cal. 2012) ............... 17

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992).................................... 12

*Corson v. Toyota Motor Sales U.S.A.*, No. 12-8499-JGB, 2016 WL 1375838
(C.D. Cal. Apr. 4, 2016) ................................................................................... 15

*Eisen v. Porsche Cars North American, Inc.,* 2014 WL 439006 (C.D. Cal.
Jan. 30, 2014) .......................................................................................... 20, 22, 23

*Grodzitsky v. Am. Honda Motor Co.*, 2014 U.S. Dist. LEXIS 24599 (C.D.
Cal. Feb. 19, 2014) .......................................................................................... 17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)...................................... 11, 12

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................................ 19, 24

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) .................... 23

*In re Extreme Networks, Inc. Sec. Litig.*, No. 15-04883, 2019 WL 3290770
(N.D. Cal. July 22, 2019)................................................................................... 13

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019)................. 11, 17, 24

*In re MyFord Touch Consumer Litig.*, 2019 WL 1411510 (N.D. Cal. Mar.
28, 2019).............................................................................................................. 24

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015)................... 13

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995).............................................. 22

*In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014) .............. 17

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597 (9th Cir. 2018) ................................................................. 23

*Keegan v. Am. Honda Motor Co.*, 2014 WL 12551213 (C.D. Cal. Jan. 21, 2014) ....................................................................................................... 18

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012)...................................... 14

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998) ........... 20

*Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ........... 17

*Milligan v. Toyota Motor Sales, U.S.A.*, 2012 WL 10277179 (N.D. Cal. Jan. 6, 2012) ................................................................................................... 23

*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982) ................. 14

*Rodriguez v. West Publ'g. Corp.*, 563 F.3d 948 (9th Cir. 2009) ............................. 14, 18

*Sadowska v. Volkswagen Group of America*, 2013 WL 9500948 (C.D. Cal. Sep. 25, 2013) ......................................................................................... 15

*Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673 (N.D. Cal. 2016)............. 24

*Smith v. Am. Greetings Corp.*, 2016 WL 362395 (N.D. Cal. Jan. 29, 2016).................. 20

*Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980 (N.D. Cal. 2010) ............................. 16

*Stockinger v. Toyota Motor Sales, U.S.A., Inc.,* 2020 WL 1289549 (C.D. Cal. Mar. 3, 2020) ............................................................................... 17

*Warner v. Toyota Motor Sales U.S.A.*, No. 15-02171-FMO (C.D. Cal. May 21, 2017) ................................................................................................. 15

*Zakskorn v. Am. Honda Motor Co.*, 2015 WL 3622990 (E.D. Cal. June 9, 2015) ....................................................................................................... 15

**OTHER AUTHORITIES**

15 U.S.C. § 2301 *et seq.* ...................................................................................2

Fed. R. Civ. P. 23(a)................................................................................. 4, 11

Fed. R. Civ. P. 23(b)(3) ........................................................................... 4, 11

Fed. R. Civ. P. 23(c)(2)(B) ..............................................................................9

Fed. R. Civ. P. 23(e)(1) ....................................................................................9

Fed. R. Civ. P. 23(e)(2)(D) ............................................................................ 19

**RULES**

CAL. BUS. & PROF. CODE § 17200 *et seq.* ......................................................2

CAL. CIV. CODE § 1750 *et seq.* ......................................................................2

CIV. CODE § 1792, *et seq.* ............................................................................2

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

Plaintiff submits this memorandum in support of his Motion for Final Approval of the Class Action Settlement,[1] and for final certification of the Settlement Class. The proposed Settlement was preliminarily approved by this Court on March 10, 2021.  Dkt 62.  Class Notice was timely disseminated pursuant to the court-approved Notice Plan, and we are pleased to advise that **NONE** of the approximate 16,000 Settlement Class Members in this case have objected to any aspect of this Settlement.  As discussed *infra*, this overwhelmingly shows that the Settlement Class Members favor the Settlement.  In addition, there have only been eight (8) requests for exclusion,[2] which, likewise, shows the Settlement Class Members' almost unanimous support for this Settlement.

The proposed Settlement resolves disputed allegations that certain vehicles distributed by Defendant Volkswagen Group of America, Inc. ("Defendant" or "VWGoA") contained an alleged defect that Plaintiff claims could potentially cause their engines to stall at low speeds (such as while the vehicle was slowing down or coming to a stop) or when the vehicle was already at a stop while the engine was running ("Alleged Defect"). VWGoA has denied these allegations, and maintains that the subject vehicles are not defective and that no warranties were breached nor any applicable statutes violated.

The settlement provides Settlement Class Members with immediate, valuable relief in the form of: (1) the initiation of a Service Action to all present owners and lessees of Settlement Class Vehicles that successfully addresses the alleged issue by providing a software update to the engine control module to be performed free of charge by VWGoA's authorized dealers, and (2) full or partial reimbursement available to all Settlement Class Members who previously paid out-of-pocket expenses (parts and labor), prior to the date of the Class Notice mailing (the "Notice Date"), for repairs made to

---

[1] Unless indicated otherwise, all capitalized terms used herein have the same meaning as those defined by the Settlement Agreement.

[2] As indicated below, some of the requests for exclusion appear to not even pertain to Settlement Class Vehicles, which means there are actually fewer than eight opt-outs.

Settlement Class Vehicles for engine stalling at low speeds (such as while the vehicle was slowing down or coming to a stop) or when the vehicle was already at a stop while the engine was running (i.e., a "Covered Repair," as defined in the Settlement Agreement), based upon terms discussed *infra*.

The Court has previously found that the Settlement satisfies all of the criteria for preliminary settlement approval. Dkt. No. 62. Notably, **NO** Settlement Class Member has objected to any aspect of this settlement. As detailed below, Plaintiff now requests that the Court grant final approval of the Settlement Agreement, as the terms are fair, reasonable and adequate, providing substantial benefits to Settlement Class Members, and because the proposed Settlement Class satisfies the requirements of Rule 23.

## II.    FACTS AND PROCEDURE

### A.    Overview of the Litigation and Arm's Length Settlement Negotiations

This nationwide putative class action alleges that the engines of certain 2019 and 2020 Volkswagen Golf GTI or Jetta GLI vehicles equipped with manual transmissions allegedly prone to potentially stalling at low speeds or when the vehicles are stopped. Plaintiff David Patrick, a California citizen, leased a new 2019 Volkswagen Jetta GLI equipped with a manual transmission from an authorized Volkswagen dealer and claims that his vehicle experienced engine stalling at low speeds, such as when the vehicle is coming to a stop or is stopped, which the dealership allegedly did not repair. FAC ¶¶ 10-17.

Plaintiff filed his initial class action complaint on October 4, 2019, asserting claims against VWGoA for violation of the Consumers Legal Remedies Act (CAL. CIV. CODE § 1750, *et seq.* (CLRA)), breach of implied warranty under the Song-Beverly Warranty Act CAL. CIV. CODE § 1792, *et seq.*), breach of express and implied warranties under the Magnuson-Moss Warranty Act (15 U.S.C. § 2301, *et seq.* (MMWA)), unjust enrichment, and violations of the Unfair Competition Law Cal. Bus. & Prof. Code § 17200, *et seq.* (UCL)). Dkt No. 1, Compl., ¶¶ 74-142. VWGoA was served on October 28, 2019, and on November 15, 2019, Plaintiff filed the First Amended Complaint ("FAC") to include

1  damages under the CLRA. Dkt No. 22, FAC ¶ 89.

2          On December 16, 2019, VWGoA filed a motion to dismiss five of Plaintiff's six

3  causes of action, arguing, *inter alia*, that Plaintiff failed to allege the absence of an

4  adequate legal remedy with respect to the equitable relief claims, failed to adequately

5  allege that VWGoA knew of the alleged defect before Plaintiff leased his vehicle, that

6  Plaintiff did not meet the MMWA's jurisdictional requirements, that the express warranty

7  did not cover design defects including the alleged defect, and that unjust enrichment was

8  not available to Plaintiff due to the existence of an express contract related to the claim and

9  adequate remedies at law. ECF 30. Plaintiff opposed the motion (ECF 33), and on March

10  5, 2020, the Court issued an order granting in part and denying in part the motion. The

11  Court dismissed with prejudice Plaintiff's claims for equitable relief and unjust enrichment

12  claims and sustained the other claims brought. ECF 44. On March 19, 2020, VWGoA

13  filed its Answer. ECF 47. The Parties negotiated and filed their Joint Rule 26(f) report and

14  a stipulated protective order and engaged in discovery. ECF 37, 45, 46. On May 5, 2020,

15  Plaintiff served VWGoA with his first set of requests for production.

16          As the litigation proceeded, Plaintiff pursued settlement negotiations with VWGoA.

17  The intensive, arm's length negotiations progressed over the course of eleven months.

18  Declaration of Tarek Zohdy ["Zohdy Decl."] ¶ 5. Initially, due to conferences regarding

19  VWGoA's motion to dismiss and a joint proposed discovery schedule, the Parties agreed

20  to elect Suggested ADR Procedure No. 3 (private dispute resolution) under Local Rule 16-

21  15.4. The parties conferred regularly over the subsequent months, began negotiating

22  Settlement terms simultaneously while litigating, and then participated in a mediation with

23  Bradley A. Winters of JAMS on December 10, 2020. Through mediation, with the

24  Mediator's assistance, the Parties reached agreement on all material Settlement terms.

25  Thereafter, the Parties held several telephonic meetings and finalized those terms. The

26  Settlement Agreement was executed on January 25, 2021. Zohdy Decl. ¶ 7.

27      **B.    The Court Granted Preliminary Approval**

28          Plaintiff filed his Motion for Preliminary Approval of the Class Action Settlement

on February 4, 2021. Dkt. No. 55. Following the hearing, the Court granted preliminary approval on March 10, 2021. (Dkt. No. 62.) In its Order Granting Preliminary Approval, this Court determined that the Settlement Class, as defined, satisfies the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3), and that the settlement itself, as well as the plan for disseminating notice to the Settlement Class, satisfied the standards for preliminary approval and Class Notice under Rule 23. *Id*. at 3-6, 8-9. The Court preliminarily designated Plaintiff as the Class Representative of the Settlement Class. *Id*. at 8. The Court also preliminarily appointed Capstone Law APC and Berger Montague PC as Settlement Class Counsel, and JND Legal Administration. as the Settlement Claim Administrator. *Id*. at 8-9.

Upon review of the Settlement terms, this Court found that the "procedure for reaching this settlement was fair and reasonable and that the settlement was the product of arms-length negotiations[]" and that "[c]ounsel for each party was experienced and had a comprehensive understanding of the strengths and weaknesses of the claims and defenses." *Id*. at 6. The Court further concluded that "[t]he settlement was also reached after mediation with a neutral mediator, Bradley Winters." *Id*.

The Court approved the Class Notice Plan and the form and content of the notice to be disseminated to Settlement Class Members and that has been uploaded to the Settlement website. *Id*. at 8-9.

### III.    MATERIAL TERMS OF THE SETTLEMENT

Plaintiff's Counsel negotiated a Settlement with several tiers of benefits to Settlement Class Members. The Settlement Class, as preliminarily certified, consists of all persons and entities who purchased or leased a Settlement Class Vehicle, defined as a model year 2019 or 2020 Volkswagen Golf GTI vehicle equipped with a manual transmission, and/or a model year 2019 or 2020 Volkswagen Jetta GLI vehicle equipped with a manual transmission, that was imported and distributed by VWGoA

for sale or lease in the United States or Puerto Rico.[3] Settlement Agreement ("SA"), ¶¶
I(P), I(Q); Preliminary Approval Order, pp. 7-8.

### A.    Benefit I: Service Action Updating ECM Software

The Settlement provides for every Settlement Class Member who currently owns or
leases a Settlement Class Vehicle to obtain an update of the engine control module
software ("software update"), free of charge, by an authorized Volkswagen dealer. This
software update, which VWGoA has now issued as a Service Action, successfully
addresses the alleged engine stalling issue that is the subject of this case. SA ¶ II.A.

### B.    Benefit II: Reimbursement for Past Out-Of-Pocket Expenses Paid for a
### Covered Repair Prior to the Notice Date

Settlement Class Members who, prior to the mailing of the Class Notice ("Notice
Date"), paid out-of-pocket expenses for a repair of engine stalling at low speeds (such as
while the vehicle was slowing down or coming to a stop) or when the vehicle was already
at a stop while the engine was running (a "Covered Repair") will be entitled to submit a
claim for reimbursement (parts and labor), subject to conditions and limitations expressly
delineated in the Settlement Agreement and Class Notice.

For Settlement Class Members who timely submit a completed, signed Claim Form
and required documentary proof that the condition previously repaired and paid for was a
Covered Repair of a Settlement Class Vehicle (engine stalling at low speeds such as while

---

[3] The following are expressly excluded from the Settlement Class: all Judges who
have presided over the Action and their spouses; all current employees, officers,
directors, agents and representatives of VWGoA, and their family members; any
affiliate, parent or subsidiary of VWGoA and any entity in which VWGoA has a
controlling interest; anyone acting as a used car dealer; anyone who purchased a
Settlement Class Vehicle for the purpose of commercial resale; anyone who purchased a
Settlement Class Vehicle with salvaged title and/or any insurance company who
acquired a Settlement Class Vehicle as a result of a total loss; any insurer of a Settlement
Class Vehicle; issuers of extended vehicle warranties and service contracts; any
Settlement Class Member who, prior to the date of the Settlement Agreement, settled
with and released VWGoA or any Released Parties from any Released Claims, and any
Settlement Class Member who files a timely and proper Request for Exclusion from the
Settlement Class. Settlement Agreement ¶ I.Q; Preliminary Approval Order, pp. 7-8.

the vehicle was slowing down or coming to a stop or when the vehicle was already at a stop while the engine was running), they will be entitled to receive reimbursement of the full amount (100%) of the paid invoice cost of the Covered Repair (parts and labor), whether or not the repair was performed by an authorized Volkswagen dealer. SA ¶ II.B.(1 and 2). If the repair was not performed by a Volkswagen dealer, the Settlement Class Member must submit documentation or a sworn declaration, confirming that he/she/it first attempted to have the repair performed by an authorized Volkswagen dealer, but the dealer declined or was unable to do so free of charge under the existing warranty. SA ¶ II.B.(2). This is very fair and reasonable, since the warranties for most of the Settlement Class Vehicles still have not nearly expired, and entitle the Settlement Class Members to a free repair of the alleged engine stalling issue by a Volkswagen dealer within the original warranty durations of 6-years/72,000-miles for the 2019 model year vehicles and 4-years/50,000-miles for the 2020 model year vehicles.  Thus, there would have been be no need for a Settlement Class Member to pay out-of-pocket for a Covered Repair that was entitled to be performed for free under the warranty, under the dealer refused or was unable to successfully perform the repair.

Further, for Settlement Class Members whose supporting repair documents state only that the condition repaired was engine stalling, but do not state that the stalling was at low speeds (such as while the vehicle was slowing down or coming to a stop) or when the vehicle was already at a stop, the Settlement Class Member may, nonetheless, receive reimbursement of twenty-five percent (25%) of the paid invoice cost of the Covered Repair (parts and labor) if, in addition to the other required documentation, the Settlement Class Member provides a sworn declaration[4] confirming that the engine stalling that was experienced did, in fact, occur at low speeds (such as while the vehicle was slowing down or coming to a stop) or when the vehicle was already at a stop while the engine was running. SA ¶ II.B.(3). This reimbursement is also available whether or not the repair was

---

[4] The pre-printed declaration forms are very clear and straightforward and are available on the settlement website.

performed by a Volkswagen dealer (if it was not, the documents or declaration discussed above must also be submitted to ensure that the Settlement Class Member first at least tried to have the repair done for free by a dealer under warranty). *Id.*

The Settlement also provides a reasonable period to submit reimbursement claims of 75 days after the Notice Date. SA ¶ II.C(1), and Ex. A thereto (Claim Form). As discussed *infra*, the Class Notice and Claim Form contain robust information about the case, the proposed Settlement and its benefits, the Settlement Class Members' rights and options, applicable deadlines for objecting, opting out and/or submitting a reimbursement claim, the information and documentation needed for a valid reimbursement claim, and how to call or email the Claim Administrator with any questions about the Settlement, when and how to submit a reimbursement claim, and any needed assistance in doing so. The Claim Form, in particular, set forth exactly what information and documents were needed for a valid reimbursement claim.  In addition, the Class Notice directed the Settlement Class Members to the settlement website, should anyone wish to review the Settlement Agreement itself, the Preliminary Approval Order, obtain additional information about the settlement including answers to Frequently Asked Questions ("FAQs"), and download additional copies of the Claim Form and form Declaration.  The Class Notice and Claim Form also provided the email, mailing address and toll-free telephone number of the Claim Administrator, to enable Settlement Class Members to easily contact the Claim Administrator with any questions and/or requests for assistance. Class Counsel contact information was also provided. The deadline to submit claims for reimbursement is September 20, 2021.

**C.     Release of Liability**

The scope of the release is typical of a class settlement and properly reflects the issues in this case and the proposed Settlement.  In consideration of the Settlement benefits, VWGoA and its related entities and affiliates (the "Released Parties," as defined in SA ¶ I.O) will receive a release of claims and potential claims related to alleged engine stalling in the Settlement Class Vehicles, including claims related to

service actions, recalls, software updates and other campaigns addressing such alleged

engine stalling, arising out of or related to the litigation or the subject matter of the

litigation, and claims which were or could have been asserted in the litigation,

including all past and present claims, whether legal or equitable or pursuant to statutory

or common law. SA ¶ I.N. Excluded from the release are claims related to engine

stalling that does not occur at low speeds (such as when slowing down or coming to a

stop) or when the vehicle is at a stop, as well as claims for personal injury and property

damage (other than damage to the Settlement Class Vehicle itself) related to engine

stalling.

### D.  Claim Submission

The Parties agreed to retain JND Legal Administration as Claim Administrator.

SA ¶ I.B. The Claim Administrator has implemented the Notice Plan, disseminated the

CAFA notice, distributed the Class Notice, administered any requests for exclusion,

and is continuing to administer the Claim process including the review of

reimbursement claims, and distribution of payments to eligible Claimants whose claims

are approved. *Id.* ¶ III.A., III.B., IV; *see* Keough Decl. ¶ 3-17. Pursuant to the

Settlement terms, VWGoA will pay all administrative costs, *Id.* ¶ III.A, so it will not

affect or reduce any benefits to which any eligible Settlement Class Member may be

entitled.

The Settlement provides for a fair, equitable and straightforward process for

submission, review and determination of reimbursement claims. For each complete

claim that is approved, the Claim Administrator will mail a reimbursement check to the

Settlement Class Member within the later of 100 days after submission of the

completed Claim, or 100 days after the Effective Date. *Id.* ¶ III.B. Significantly, the

Settlement provides a 30-day period for a Settlement Class Member to cure any

deficiencies in a claim which are outlined in a deficiency letter by the Claims

Administrator. *Id.* This is a benefit not afforded in all class settlements.  In addition,

this Settlement provides an added benefit in that any Settlement Class Member that

disagrees with the ultimate denial of his/her/its/their reimbursement claim in whole or in part may request an "attorney review" of that decision within 14 days of such denial. *Id.*, ¶ II.C.(5). If that is requested, Class Counsel and Defense Counsel will confer and make good faith efforts to resolve the disputed denial. *Id*. Finally, the Class Notice and its accompanying Claim Form provide all of the necessary details, including when and how a reimbursement claim must be submitted, what information and proof is required for a valid claim, and how to contact the Claims Administrator, or Class Counsel, with any questions or requests for assistance.

And as explained below, the Settlement website also makes all of the details of the reimbursement program, as well as additional Claim Forms, declarations, copies of the robust Class Notice, and answers to FAQs, readily available to any Settlement Class Members.  There is also a dedicated toll-free telephone support line and e-mail address for Settlement Class Members to utilize for assistance.

### E.    The Notice to The Settlement Class Was Disseminated in Accordance with the Court-Approved Notice Plan

 Before approving a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Where the settlement class is certified under Rule 23(b)(3), the notice must also be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Pursuant to the Settlement Agreement and the Preliminary Approval Order, the Claims Administrator successfully implemented the Class Notice plan. On February 12, 2021, the Claims Administrator mailed the "CAFA" Notice of the Settlement to the United States Attorney General and to the appropriate State officials. On July 6, 2021, the Claims Administrator mailed the Class Notice and Claim Form, both of which were approved by the Court, to the 16,783 Settlement Class Members identified through the applicable States' DMV records as present or former owners and lessees of the Settlement

1    Class Vehicles. (Declaration of Jennifer M. Keough ["Keough Decl."] ¶ 3, 7. Prior to

2    mailing the Class Notice, the Claims Administrator conducted an address search through

3    the United States Postal Service's National Change of Address database to update the

4    address information for Settlement Class Vehicle owners and lessees. For each individual

5    Class Notice that was returned as undeliverable, the Claim Administrator re-mailed all

6    Class Notices where a forwarding address was provided. For the remaining undeliverable

7    notice packets where no forwarding address was provided, the Claim Administrator

8    performed an advanced address search (e.g., a skip trace) and re-mailed any undeliverable

9    notice packets to the extent any new and current addresses were located. Keough Decl. ¶ 6.

10          On July 6, 2021, the Claims Administrator also made available an interactive, case-

11   specific Settlement Website,  www.EngineStallingSettlement.com, which features

12   instructions on how and when to submit a Claim for Reimbursement, a page with answers

13   to frequently asked questions ("FAQs"), instructions on how to contact the Claims

14   Administrator (by email, mail or toll-free telephone number), Class Counsel and defense

15   counsel for any desired assistance, the deadlines for objecting to or opting out of the

16   Settlement and to submit a claim for reimbursement for those that have not opted out, the

17   date, time and location of the Final Fairness Hearing, and links to important case

18   documents, including but not limited to the Claim Form, the Class Notice, the Settlement

19   Agreement. Keough Decl. at ¶ 8; *see also* SA ¶ IV(B)(5). The Class Notice also provided

20   the details about the Settlement, its benefits, the Settlement Class Members' rights, the

21   applicable deadlines, the date/time/place of the Final Fairness Hearing, and the procedure

22   for and information/documents needed for submitting a valid reimbursement claim, as

23   well as the Claim Administrator's email address, mailing address, toll-free support line,

24   and the Settlement website address. *Id.*

25          **F.      There Have Been No Objections to The Settlement, and Only 8**

26                 **Requests for Exclusion.**

27          The deadline for Settlement Class Members to object to, or request to be excluded

28   from, the Settlement expired on August 5, 2021. **No Settlement Class Member has**

**objected to any aspect of this Settlement.  In addition, only 8 requests for exclusion have been submitted (merely 0.04% of the Settlement Class).**[5] Keough Decl. at ¶ 13-15.

### G.    Proposed Class Counsel Fees, Litigation Expenses, And Class Representative Service Award

Subject to Court approval, the Parties separately negotiated, after having already reached agreement on the class benefits, sums for reasonable Class Counsel fees and expenses, and a class representative incentive award, which is subject of a separate fee motion filed on July 22, 2021, pursuant to the schedule set forth in the Preliminary Approval Order. Dkt. No. 64.

## IV.    ARGUMENT

### A.    Class Certification Requirements Are Met

The Court certified the Class for settlement purposes upon Preliminary Approval, finding that requirements under Rule 23(a) and Rule 23(b)(3) are satisfied. *See* Dkt. No. 62, p. 3-6. Nothing has changed that would affect the Court's ruling on class certification. *See Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016) (reconfirming the certification set forth in the preliminary approval order "[b]ecause the circumstances have not changed" since that order); *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc) (courts must apply the criteria for class certification "differently in litigation classes and settlement classes"). Therefore, the Court should grant final certification of the settlement class.

### B.    The Court Should Grant Final Approval of the Class Settlement

Upon final approval, the Court's duty is to determine whether the proposed Settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). In evaluating the Settlement, the Court is guided by

---

[5] While eight (8) requests for exclusion have been submitted, several may not involve Settlement Class Vehicles.  Accordingly, the parties will provide supplementation as to which of those eight (8) submissions involve Settlement Class Vehicles and are valid requests for exclusion.

several important policies. First, federal courts favor settlements, particularly in class actions, where the costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong policy that favors settlements, particularly where complex class action litigation is concerned"). Second, for settlements reached through arms'-length negotiations, courts are to give:

> [P]roper deference to the private consensual decision of the parties. . . . [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Hanlon*, 150 F.3d at 1027.

Guided by these policies, the district court then may consider some or all of the following factors in evaluating the reasonableness of a settlement: (1) the strength of the plaintiff's case and the risk, expense, complexity, and likely duration of further litigation; (2) the risk of maintaining class action status throughout trial; (3) the amount offered in settlement; (4) the extent of discovery completed and the stage of proceedings; (5) the participation of a governmental participant; (6) the experience and views of counsel; and (7) the reaction of class members. *See Hanlon*, 150 F.3d at 1026 ("*Hanlon* factors").

The recent amendments to Rule 23 direct the Court to consider a similar list of factors, including whether: (A) the Class Representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. FED. R. CIV. P. 23(e)(2). The Advisory Committee's notes clarify

that this list of factors does not "displace" the *Hanlon* factors, "but instead aim to focus the court and attorneys on 'the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-04883, 2019 WL 3290770, at *6 (N.D. Cal. July 22, 2019) (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment).

Additionally, for class action settlements prior to contested certification, the Ninth Circuit further requires that the Court scrutinize the settlement even more closely, applying the so-called *Bluetooth* factors.[6] *See Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015). As set forth below, the Settlement satisfies all of these factors, meriting final approval.

### 1.    Class Representative and Plaintiff's Counsel Have Adequately Represented the Class and the Settlement Was Negotiated at Arms'-Length

Under Rule 23(e)(2)(A)-(B), the Court considers whether Plaintiff and Plaintiff's Counsel adequately represented the class and whether the proposed settlement was negotiated at arm's length. Both factors are amply satisfied. There is no suggestion of a conflict between the Class Representative and Plaintiff's Counsel on the one hand, and Settlement Class Members on the other. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) (conflict cannot be "speculative" or "trivial" but must go to "the heart of the litigation"). Plaintiff and Plaintiff's Counsel have vigorously pursued the claims on behalf of the Class, adducing important facts regarding VWGoA's pre-sale knowledge of the Alleged Defect, litigating the matter, and negotiating a valuable Settlement to deliver immediate relief to the Class. Zohdy Decl. ¶¶ 8-13.

Rule 23(e)(2)(B) is also satisfied, as the Settlement is the product of arm's length negotiations after a mediation session and multiple telephonic meetings before mediator Bradley A. Winters of JAMS. Zohdy Decl. ¶¶ 5-7.

---

[6] *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 938 (9th Cir. 2011).

### 2. The Settlement, Which Provides Valuable Benefits to the Class, Is Fair, Reasonable, and Adequate

Under Rule 23(e)(2)(C), the Court is to examine the relief to the Class in light of the costs, risks, and delay of trial and appeal, the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, the terms of any proposed award of attorney's fees, including timing of payment; and any agreement required to be identified. This overlaps with first three *Hanlon* factors, the strength of the plaintiff's case balanced against the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class certification through trial, and the amount of settlement. In evaluating these considerations, a court assesses "objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach [a settlement]." *Adoma v. Univ. of Phoenix, Inc.,* 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012). However, there is "no single formula" to be applied. *Rodriguez v. West Publ'g. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

In assessing the settlement's value, courts are instructed to take into account that "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citations omitted). But this Court "put[s] a good deal of stock in the product of an arms-length, non-collusive negotiated resolution, and ha[s] **never prescribed a particular formula** by which that outcome must be tested." *Rodriguez*, 563 F.3d at 965 (internal citations omitted; emphasis added). The Court "need not include a specific finding of fact as to the potential recovery for each of the plaintiffs' causes of action." *Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012). Indeed, *Lane* expressly rejected any requirement that district courts calculate the value of the claims—explaining that "not only would such a requirement be onerous, it would often be impossible... [since] the amount of damages of a given plaintiff (or class of plaintiffs) has suffered in a question

1    of fact that must be proved at trial." *Id.* [7]

2    **(a)** **The Relief Provided for the Class Is Fair, Adequate,**

3    **and Reasonable Considering the Costs, Risks, and**

4    **Delay of Trial and Appeal**

5    As discussed above, the Settlement offers substantial benefits to Settlement Class

6    Members, including the issuance of a nationwide service action affording a software

7    update for the engine control module free-of-charge to the Settlement Class Members,

8    and reimbursement for past paid out-of-pocket expenses incurred for a Covered Repair.

9    When weighed against the risk of further litigation, the Settlement is fair, adequate, and

10   reasonable. While Plaintiff believes that his case is strong on the merits, VWGoA has

11   raised a number of substantive defenses that present serious risks to Plaintiff's case.

12   These defenses include, among others, that only isolated instances of engine stalling

13   have occurred very low speeds or at a stop, and thus did not pose any safety hazard,

14   and that VWGoA did not have pre-sale knowledge of Plaintiff's claimed defect, did not

15   commit any misrepresentations or material omissions, did not violate any common law

16   or statutory duties, and did not breach its warranties which, as stated earlier, are very

17   robust (and even at present have not yet expired for most of the Settlement Class

18   Vehicles). VWGoA has also asserted defenses with respect to Plaintiff's claims of duty

19   to disclose, causation, breach of any warranty and/or damages. Other defenses will

20

21   ─────────────────

22   [7] Accordingly, courts, in evaluating automotive settlements, do not require the
     plaintiff to present speculative measures of the maximum value of the action upon a
     successful trial. *See, e.g.*, *Warner v. Toyota Motor Sales U.S.A.*, No. 15-02171-FMO (C.D.

23   Cal. May 21, 2017), Dkt. No. 140, at *13 (granting final approval without a maximum
     valuation, noting that settlements involve "abandoning of highest hopes"); *Corson v.*

24   *Toyota Motor Sales U.S.A.*, No. 12-8499-JGB, 2016 WL 1375838, *7 (C.D. Cal. Apr. 4,
     2016) (granting final approval, based in part, on "substantial recovery" that class members

25   would receive as a result of the settlement); *See also Chambers*, 214 F. Supp. 3d at 888-89
     (no valuation required to approve consumer class action settlement); *Zakskorn v. Am.*

26   *Honda Motor Co.*, 2015 WL 3622990, at *8 (E.D. Cal. June 9, 2015) (same); (finding
     that settlement provides adequate compensation without requiring extensive valuation);

27   *Sadowska v. Volkswagen Group of America*, 2013 WL 9500948, *4 (C.D. Cal. Sep. 25,

28   2013) (same).

likely be asserted with respect to the claims of absent Settlement Class Members under applicable state laws.  Finally, VWGoA would likely argue that engine stalling could result from other factors having nothing to do with the design or manufacture of the engine, such as lack of or improper maintenance, prior repairs or modifications, bad driving habits or other misuse.

There is, thus, an appreciable risk that an engine defect cannot be proven, and even if it can, that it may not lead to legal liability under federal or state statutes. *See*, *e.g.*, *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 991-92 (N.D. Cal. 2010) (granting defendant's motion for summary judgment and finding no safety risk), *aff'd*, 462 F. App'x 660 (9th Cir. 2011). Plaintiff would have to establish violations of individual state and federal consumer protection and warranty statutes.

There is also a real risk that if the litigation proceeds, class certification may not be granted. VWGoA has raised a number of defenses to class certification in the litigation context, including the assertions that liability and damages cannot be prosecuted on a class-wide basis, and that the many individual issues among the putative class members and their vehicles would predominate over any common issues. For example, many of the claims in this case may involve factual issues of what, if anything, each Settlement Class Member saw, read or heard, and relied upon, and how they otherwise may have interacted with particular VWGoA dealership sales personnel, in making the decision to purchase or lease a Settlement Class Vehicle.  Moreover, some Settlement Class Members may likely have purchased their vehicles from third-parties that were not Volkswagen dealers. In addition, the original express warranties are still in effect for a portion of the Settlement Class Vehicles, and any breach of warranty claim could involve fact sensitive issues regarding each Settlement Class Member's usage, maintenance, and repair or repair attempts of his/her/its vehicle..

VWGoA would further argue differences among the vehicle models (*i.e.* Golf GTI vs. Jetta GLI) and in the alleged manifestation and/or root causes of engine stalling in each of the Settlement Class Vehicles that could preclude class certification in this

1  case. VWGoA would also argue that engine stalling may, in fact, result from many

2  differing causes not consistent with any alleged defect, including improper or

3  insufficient maintenance, improper repairs, vehicle misuse or abuse, vehicle damage

4  and other external contributors, driving conditions, and driver input, particularly given

5  the putative class vehicles have manual transmissions.  Such individualized issues may,

6  in and of themselves, be found to predominate over alleged common issues.

7          In addition, while not precluded in the settlement context, the certification of a

8  nationwide class in a litigation context may be precluded based, among other things,

9  upon the many differences amongst the laws of the fifty states that would apply to each

10  Settlement Class Member's claims.  Conversely, this does not present an issue in

11  approving class settlements such as this, where such manageability impediments at trial

12  are not an issue. *See In re Hyundai*, 926 F.3d at 556; *Mazza v. American Honda Motor*

13  *Co.*, 666 F.3d 581, 589-94 (9th Cir. 2012).

14          While Plaintiff would vigorously dispute these claims, consumers bringing

15  automotive defect actions are frequently denied class certification due to lack of

16  common proof.[8]  Recently, a California district court denied class certification

17  involving a theory based on material omission of a similar defect. *See Stockinger v.*

18  *Toyota Motor Sales, U.S.A., Inc.,* 2020 WL 1289549, at *6 (C.D. Cal. Mar. 3, 2020)

19  (finding plaintiffs failed to satisfy the commonality and predominance requirements of

20  Rule 23 in a similar automotive defect action alleging material omissions and breaches

21  of the implied warranty of merchantability).

22          This body of recent case law demonstrates that, had the case continued, "plaintiffs

23  [would] face[] a substantial risk of incurring the expense of a trial without any recovery."

24  *In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 451 (C.D. Cal. 2014).

---

25  ───────────────

26  [8] *See, e.g.*, *Grodzitsky v. Am. Honda Motor Co.*, 2014 U.S. Dist. LEXIS 24599
    (C.D. Cal. Feb. 19, 2014) (denying certification due to lack of evidence that common
    materials were used for all defective "window regulators" in the class); *Cholakyan v.*
27  *Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 553 (C.D. Cal. 2012) ("There is also no
    evidence that a single design flaw that is common across all of the drains in question is
28  responsible for the alleged water leak defect…").

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    Indeed, the risk of continuing litigation, including the risk of new adverse statutory or case

2    law, increased costs, and expiration of a substantial amount of time, weigh heavily in favor

3    of settlement. *Rodriguez*, 563 F.3d at 966.

4         In a contested certification motion, both parties would submit expert evidence,

5    creating a "battle of the experts" on the various liability and damages issues germane to

6    whether this action is suited for class certification, with the outcome being uncertain.

7    *See Aarons v. BMW of N. Am. LLC*, 2014 U.S. Dist. LEXIS 118442, at *29-31 (C.D.

8    Cal. Apr. 29, 2014) (approving a settlement for repairs/reimbursement of transmission

9    defect and observing "it is the very uncertainty of outcome in litigation and avoidance

10   of wasteful and expensive litigation that induce consensual settlements." [citation

11   omitted]). Given the substantial risks of continued litigation, including maintaining

12   class certification, and the significant relief secured for the Class, the proposed

13   Settlement should be viewed as a fair, reasonable, and adequate compromise of the

14   issues in dispute.

15              **(b)    The Method of Distribution, Attorneys' Fees, and**

16                            **Other Agreements**

17        Under Rule 23(e)(2)(C)(ii)-(iv), the Court is to review the method of distribution,

18   attorneys' fees and the existence of other agreements. As set forth above, claims for

19   reimbursement are submitted on a claims-made basis using the Settlement's user-friendly

20   claim forms. It is standard in settlements to require repair orders or receipts to substantiate

21   a claim. *See Keegan v. Am. Honda Motor Co.*, 2014 WL 12551213, *15 (C.D. Cal. Jan.

22   21, 2014) ("Courts frequently approve settlements that require class members to submit

23   receipts or other documentation."). In fact, most states have record-retention laws, and

24   "dealerships and service centers routinely maintain such records; thus, to the extent that

25   class members do not have an invoice in their possession, it is likely that they would be

26   able to secure such documentation." *Asghari v. Volkswagen Grp. of Am.*, 2015 WL

27   12732462, at *29 (C.D. Cal. May 29, 2015) (overruling objection that requiring claimants

28   to submit proof of compliance with scheduled oil changes in warranty maintenance

1    manual is unfair and overly burdensome).

2    　　　For the reasons discussed in greater detail in Plaintiff's separately filed Motion for

3    Attorneys' Fees, Costs, and a Class Representative Incentive Award (Dkt. No. 64), Plaintiff

4    seeks reasonable attorneys' fees and costs in the total amount of $505,000, and an

5    incentive award of $5,000. It should be noted that an award of Class Counsel fees/expenses,

6    and the Class Representative incentive award, are completely separate and apart from the

7    settlement relief, and do not, in any way, reduce or affect any Settlement Class Member's

8    eligible benefits afforded by the Settlement.  With the exception of the Parties' settlement of

9    attorneys' fees and litigation costs, none of the *Bluetooth* factors are present with the Parties'

10   Settlement. Plaintiff's Counsel do not seek a disproportionate share of fees and there is no

11   "reverter" of unclaimed funds to VWGoA as the Settlement does not provide for the

12   establishment of a common fund. Rather, the settlement was negotiated at arm's-length after

13   mediation before an experienced mediator. Further, by agreeing to resolve attorneys' fees

14   amicably, VWGoA's counsel averted the possibility that Plaintiff's Counsel might apply for,

15   and receive, a much larger award, and thus avoided a "second major litigation" on attorneys'

16   fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees

17   should not result in a second major litigation.").

18   　　　Finally, aside from the Settlement Agreement, Plaintiff's Counsel have a fee-

19   sharing agreement which has been consented to by Plaintiff. No other agreements have

20   been made in connection with this Settlement under Rule 23(e)(3).

21   　　　**3.    The Settlement Treats Settlement Class Members Equitably**

22   　　　The Rule 23(e)(2) factor turns on whether the proposed settlement "treats class

23   members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of

24   concern could include whether the apportionment of relief among class members takes

25   appropriate account of differences among their claims, and whether the scope of the

26   release may affect class members in different ways that bear on the apportionment of

27   relief." Fed. R. Civ. P. 23(e)(2)(D), Advisory Committee's Notes.

28   　　　Here, the Settlement generally treats the Settlement Class Members equitably as

to one another. All current owners and lessees are equally eligible to receive the free Service Action ECU software update that addresses the alleged engine stalling issue. In addition, all present and former owners and lessees are eligible for reimbursement under the Settlement, either at 100% or 25% depending upon the claim and records submitted, to the extent that they paid out-of-pocket expenses for a past Covered Repair and otherwise meet the settlement criteria. *See Asghari,* 2015 WL 12732462, at *7 (approving settlement providing for reimbursement based upon proof of repairs). The Settlement's release is also applicable in the same way to all Settlement Class Members that have not properly excluded themselves from the Settlement.  Accordingly, the Settlement treats all class members equitably, further supporting approval of the Settlement. Finally, though the class representative will receive an additional $5,000, this requested Plaintiff's incentive award is in recognition for the service he performed on behalf of the class, and the Ninth Circuit has approved such awards.[9]

### 4.    The Extent of Discovery Completed Supports Final Approval

Courts may also consider the extent of discovery and the current stage of the litigation to evaluate whether parties have sufficient information to make an informed decision to settle the action. *See Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998). A settlement negotiated at an earlier stage in the litigation will not be denied so long as sufficient investigation has been conducted. *Eisen v. Porsche Cars N. Am.*, 2014 WL 439006, at *4 (C.D. Cal. Jan. 30, 2014) (finding that counsel had "ample information and opportunity to assess the strengths and weaknesses of their claims" despite "discovery [being] limited because the parties decided to pursue settlement discussions early on.").

Both before and after the action was filed, Plaintiff's Counsel thoroughly

---

[9] *Boyd v. Bank of Am. Corp.*, 2014 WL 6473804, at *7 (C.D. Cal. Nov. 18, 2014) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 976-77 (9th Cir. 2003)). The awards here are comparable to the "typical incentive awards in the Ninth Circuit, where $5,000 is presumptively reasonable." *Smith v. Am. Greetings Corp.*, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016).

investigated and researched these claims to evaluate VWGoA's representations and

omissions concerning the alleged low-speed stalling issue in the case. Among other

tasks, Plaintiff's Counsel fielded inquiries from putative class members and

investigated many of their reported claims. Plaintiff's Counsel also researched publicly

available materials and information provided by the National Highway Traffic Safety

Administration ("NHTSA") concerning consumer complaints about the alleged engine

stalling defect. Plaintiff's Counsel also reviewed and researched consumer complaints

and discussions of problems relating to the alleged defect in articles and forums online

discussing the alleged defect. Zohdy Decl. ¶ 8.

Additionally, Plaintiff propounded Requests for Production of Documents and

received invaluable data and information from VWGoA concerning investigation and

root cause analyses, technical background regarding engine design and software

affecting engine driveability, data on customer complaints and warranty claims

regarding the alleged engine issue, communications between VWGoA, putative class

members and Volkswagen dealerships concerning reports and resolutions of the

alleged engine stalling issue, and detailed information regarding every putative class

vehicle including Vehicle Identification Numbers, production dates, warranty periods

and other relevant data.

Moreover, in confirmatory discovery relating to the Settlement, Plaintiff sought and

recovered detailed warranty and other internal data. Zohdy Decl. ¶ 10.

All of the data and material exchanged, together with the substantial information

obtained through counsel's detailed investigation and analysis, were thoroughly and

meticulously reviewed by Plaintiff's Counsel, and have enabled Plaintiff's Counsel to

informatively and meaningfully evaluate the benefits and risks of litigation and negotiate

this favorable Settlement for the Class.

Further, over the course of litigation and throughout settlement, Plaintiff's

Counsel responded to Settlement Class Members who reached out regarding problems

with their Class Vehicles and sought relief. Plaintiff's Counsel also conducted

interviews with Settlement Class Members regarding their pre-purchase research, purchasing decisions and repair histories and developed a plan for litigation and settlement based in part on Settlement Class Members' reported experiences with their Class Vehicles and VWGoA dealers. Zohdy Decl. ¶ 9.

### 5. The Views of Experienced Counsel Should Be Accorded Substantial Weight

The fact that sophisticated parties with experienced counsel have agreed to settle their dispute should be given considerable weight by courts, since "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Here, the Parties achieved a settlement after a thorough review of relevant documents and testimony, as well as a rigorous analysis of the Parties' claims and defenses. The expectations of all Parties are embodied by the Settlement, which, as set forth above, is non-collusive, being the product of arms'-length negotiations and finalized with the assistance of an experienced mediator. The Parties were represented by experienced class action counsel possessing significant experience in automotive defect and class action matters. *See, e.g.*, Zohdy Decl. ¶¶ 14-15, Ex. 1; Paul Decl. ¶¶ 3-6. Likewise, VWGoA's counsel, Herzfeld & Rubin, P.C., is a renowned class action defense firm. The Parties' recommendation to approve this Settlement should therefore "be given great weight." *Eisen v. Porsche*, 2014 WL 439006, at *5 (crediting the experience and views of counsel in approving a settlement resolving automotive defect allegations).

### 6. The Reaction of Settlement Class Members to the Proposed Settlement[10]

As discussed above, **no Settlement Class Member has objected to any aspect of**

---

[10] There is no governmental participant in this case, and so this factor is neutral.

1    **this Settlement,** and only 8 individuals have submitted requests for exclusion[11]

2    (amounting to only 0.04% of the Settlement Class). Zohdy Decl. ¶ 19. This minuscule

3    percentage of exclusions, and the complete lack of any objections, demonstrate

4    overwhelmingly that Settlement Class Members have reacted favorably to the Settlement,

5    supporting final approval. *See, e.g., Eisen,* 2014 WL 439006, at *5 ("Although 235,152

6    class notices were sent, 243 class members have asked to be excluded …."); *Milligan v.*

7    *Toyota Motor Sales, U.S.A.*, 2012 WL 10277179, at *7-8 (N.D. Cal. Jan. 6, 2012) (finding

8    favorable reaction where 364 individuals opted out [0.06%] following a mailing of

9    613,960 notices); *Browne,* 2010 U.S. Dist. LEXIS 14575, at *49 (finding favorable class

10    reaction where, following a mailing of 740,000 class notices, 480 or 0.65% opted out).

11         **C.**    **The Settlement Satisfies the *Bluetooth* Factors**

12         Finally, pre-certification settlements require further inquiry for "more subtle signs"

13    of potential collusion between class counsel and defendant. *In re Bluetooth*, 654 F.3d at

14    946-47. But in applying "all of these factors, considerations, 'subtle signs,' and red flags,

15    the underlying question remains this: Is the settlement fair?" *In re Volkswagen "Clean*

16    *Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018).

17    These factors "in the end are just guideposts." *Id.*

18         As already recognized in the Preliminary Approval Order, there was no collusion

19    with respect to the negotiation of this Settlement.  Indeed, this Settlement does not bear

20    any hallmarks of collusion, such as when class counsel "receive a disproportionate

21    distribution of the settlement" or when "class receives no monetary distribution but class

22    counsel are amply rewarded." *Bluetooth*, 654 F.3d at 947. Plaintiff's Counsel do not seek a

23    disproportionate share of fees, the fees do not affect the Settlement Class Members' settlement

24    benefits, and there is no "reverter" of funds to VWGoA since the Settlement does not provide

25    for the establishment of a common fund. Rather, the settlement was negotiated at arm's-length

26    and with the assistance of a very respected mediator at JAMS – one of the most renowned and

27

28                [11] As indicated above, some of the requests for exclusion may not involve Settlement Class Vehicles, thereby decreasing the actual number of opt-outs.

1    respected mediation companies.

2          Clearly, this Settlement, to which no Settlement Class Member has objected, is not

3    the product of collusion, nor is the mere fact that the parties also, after agreeing to the

4    material terms of the Settlement, negotiated a "clear sailing" agreement to avoid an

5    unnecessary dispute regarding counsel fees and expenses that would burden the parties and

6    the Court. *See, e.g., In re Hyundai*, 926 F.3d at 569-70 (where no collusion was found

7    because the settlement afforded fair, reasonable and adequate class benefits - - as

8    distinguished from *Bluetooth*, where "the settlement paid the class zero dollars" yet the

9    agreed counsel fee was eight times the Cy Pres award - - and the "clear sailing provision"

10   was not problematic since "[t]he settling parties agreed on the amount of class

11   compensation" well before negotiating, "'over multiple mediation sessions with a

12   respected and experience mediator,' the 'reasonable attorney's fees provided in the

13   settlement agreement'"). Indeed, the en banc panel in *Hyundai* emphasized that the Ninth

14   Circuit had "previously approved such an approach," as it "put a good deal of stock in the

15   product of an arms-length, non-collusive, negotiated resolution." *Id*. (citation omitted).

16   That fees were separately awarded under the lodestar method, with a multiplier ranging

17   from 1.22 to 1.55, also supports a finding that the settlement was not collusive. *Id*. at 571-

18   72.

19         *Hyundai*'s acceptance of the non-collusive "clear-sailing" provision is also

20   consistent with pre-*Hyundai* cases. *See, e.g., In re MyFord Touch Consumer Litig*., 2019

21   WL 1411510, at *1 (N.D. Cal. Mar. 28, 2019) (approving settlement with a "clear-sailing

22   provision" partly because the fee agreement were reached under the auspices of an

23   experienced mediator); *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 687

24   (N.D. Cal. 2016) (clear-sailing provision does not signal collusion when the agreed-upon

25   fees are reasonable and the relief negotiated for the class is favorable). Indeed, the U.S.

26   Supreme Court had instructed parties to "settle the amount of a fee" to avoid uncertainty,

27   risk, and the potential of a resource-draining "second major litigation" on fees. *Hensley*,

28   461 U.S. at 437.

Thus, the Settlement does not support collusiveness under the second *Bluetooth* factor, and the third *Bluetooth* factor is also absent, as there is no reversion to VWGoA.

Quite simply, no badges of collusion exist. The Court, after applying the *Bluetooth* factors, should find that the Settlement is not the product of collusion and is fair, reasonable and adequate, meriting final approval.

## V.    CONCLUSION

Based on the foregoing, the proposed Settlement is fair, adequate, and reasonable, and satisfies the standard for final approval. Accordingly, Plaintiff moves the Court to enter the Final Order and Judgment granting final approval of the Settlement Agreement and grant such other and additional relief as the Court may deem appropriate.

Dated:  August 30, 2021                     Respectfully submitted,


                                            By: Tarek H. Zohdy
                                               Tarek H. Zohdy
                                               Cody R. Padgett
                                               **CAPSTONE LAW APC**

                                               Russell D. Paul (*pro hac vice*)
                                               Amey J. Park (*pro hac vice*)
                                               **BERGER MONTAGUE PC**

                                               Attorneys for Plaintiff David Patrick